Shaw C. J.
delivered the opinion of the Court. The horses, the property in controversy, having been attached as the property of Charles Boyden, son of the plaintiff, by a process, valid as against the son, by the defendant, and being claimed by the plaintiff under an assignment prior in point of time, the question is upon the validity of this assignment. The fact that the vendor was in the possession of the property, after the assignment, was proper evidence to the jury, of fraud in the sale. To repel the conclusion arising from this fact, the plaintiff offered evidence to show, that after the sale Jie directed his son to take the horses to Brooks’s inn, in Temple-ton, and get the horses kept at his expense, and that he himself went to Brooks’s the next day, and told him that he owned the horses, by virtue of a bill of sale, and would pay for the keeping of them. This was objected to as being the plaintiff’s own declarations ; but we are of opinion, that it was rightly admitted, not as proof of the facts alleged, but as part of the *372 res gestee. It showed, that he was incurring expense, and charging himself with a debt, and that as owner and principal, in which character a mere parol promise was binding, not as a surety or guarantor for his son, which would have required a promise in writing. It tended to show that the possession and acts of the son, were those of an agent. That part of the declarations, in which he said that he owned the horses under a bill of sale, was made immediately after the sale, before any attachment or other adverse claim intervened, to a person having the custody of the horses, and who might be called upon for information, and was we think competent, as proof of notoriety, and to repel the suggestion of secresy, arising from the fact relied upon, that notwithstanding the supposed sale, the property remained in the custody of the vendor. In all these respects, those declarations were acts done, and were competent evidence to repel the charge of fraud.
Another question arising from the report is, whether Lewis was an incompetent witness, under the circumstances stated If he had a pecuniary interest in the event of the suit; if he were to acquire any valuable legal right, or exempt himself from any pecuniary liability, he was incompetent, although such interest was small or remote.
The circumstances were, that Lewis was an original attaching creditor ; that he had directed the defendant to attach the horses, as the property of Charles Boyden, and had joined with others in an application to the officer to sell the property on mesne process, pursuant to the statute, which was done. It further appeared, that he had discontinued his suit, before he was called as a witness.
Till his suit was discontinued, there could be no question ; the attaching creditors being considered as the real party in interest, and the officer defending as trustee for them. The question then is, whether the discontinuance of the suit, whereby he ceased to be an attaching creditor, removed the disability. The consideration, that he acquired a strong bias am. prejudice, whilst acting with other attaching creditors, in measures to defeat the plaintiff’s title, would go to his credit, not to his competency.
It has been argued, that where the attaching creditor gives *373 a specific direction , to an officer, to attach certain property, the title to which may be contested, such attaching creditor is under an implied obligation to indemnify the officer against
such taking. No direct authority was cited in support of that position ; but we do not think it necessary to give any opinion upon that question, because we are of opinion, that upon another ground the witness was interested.
The witness joined with other attaching creditors in an application to the officer to sell the goods, in pursuance of which they were sold. Such a sale must be attended with expenses.
If the officer succeeds in this suit and holds the goods, these expenses are chargeable upon the fund, the officer being answerable to creditors only for the net proceeds, deducting expenses. But if the officer fails, these expenses must be a charge upon his employers, the attaching creditors. Acting as their agent, and incurring charges at their request, would render them liable. From such liability the witness could not become exempt by discontinuing his suit. He therefore had an interest in the event of the suit, and was rightly rejected as incompetent.
Upon the question of damages, we think that the direction, as a general rule, was right, but that under the circumstances of the present case, the verdict should be entered for the amount of the plaintiff’s own debt. This was an assigmnent to the plaintiff of property in trust to sell, and from the proceeds to pay his own debt, and pay over the surplus to the creditors of the assignor.
It results from a series of decisions in this commonwealth, that an assignment in trust to pay the assignees themselves, and other creditors parties and assenting thereto, is valid ; and that an assignment to one to pay creditors, who are not parties or assenting thereto, is void as against the creditors of the assignor. It has also been held, that where time is allowed for creditors to come in, if the property be attached before the creditors have, all come in, the attaching creditor takes precedence of a creditor who shall afterwards become party to the assignment. Russell v. Woodward, 10 Pick. 408. This system may be peculiar to this commonwealth, but it rests on a series of decisions, under which it has gradually been form *374 ed, and is now firmly established. C-onformably to the rule thus established we consider this assignment, so far as it was made to secure an existing debt to the assignee himself, as valid and binding ; so far as it exceeded that in value, it was a naked trust for creditors, and was void against attaching creditors. The verdict is therefore to be reduced to the smaller sum, and judgment rendered upon it.[1]

 See Bradford v. Tappan, ante, 79, note.